**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LORI HEIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-07962 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| COMCAST CABLE COMMUNICATIONS ) | |
| LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Defendant Comcast Cable Communications, LLC's motion to dismiss [44] is granted. Plaintiff's First Amended Complaint is dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint that remedies the deficiencies discussed herein, if she is able to do so, by 6/22/2020. If Plaintiff fails to file a Second Amended Complaint by 6/22/2020, this case will be dismissed with prejudice and final judgment entered in favor of Defendant. Status hearing set for 6/3/2020 [77] is stricken. See the accompanying Statement for details.

**STATEMENT**

An imposter using Plaintiff Lori Heim's name and social security number fraudulently opened up an account for cable service at a Chicago address with Defendant Comcast Cable Communications, LLC ("Comcast"). As part of its normal procedure, Comcast obtained a credit report on Heim before opening the account. Several months later, the fraudulent account was closed with an unpaid balance. Shortly thereafter, Comcast again obtained Heim's credit report. As a result, Heim has brought the present action alleging that Comcast violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by accessing her credit report without an authorized purpose.[1] Now, Comcast moves to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 44.) For the reasons that follow, Comcast's motion is granted.

**I.**

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views the facts in the light most favorable to Heim as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

---

[1] Heim's FAC asserts several other claims against two additional defendants. Those defendants, however, have been voluntarily dismissed from the action. (Dkt. Nos. 53–54.)

As alleged, Heim is a longtime Florida resident. (FAC ¶¶ 4, 19, Dkt. No. 41.) On September 1, 2017, an imposter using Heim's name and social security number sought to open an account with Comcast for cable service at a Chicago address. (*Id.* ¶¶ 16–17.) Under its normal procedure, Comcast does not require an in-person verification of a new customer's identity. (*Id.* ¶ 13.) Instead, before opening an account, Comcast uses the customer's social security number to obtain a credit report. (*Id.* ¶ 14.) Comcast's stated purpose for obtaining a customer's credit report is to prevent identity theft. (*Id.* ¶ 15.) In keeping with this procedure, Comcast obtained Heim's credit report before opening the account in her name. (*Id.* ¶ 18.)

Despite the fact that Heim has never lived in Illinois and her credit report listed a Florida address as her residence, Comcast proceeded to open the account in Heim's name. (*Id.* ¶¶ 19–21.) Several months later, Comcast deactivated the account leaving it with an unpaid balance of $637. (*Id.* ¶ 22.) On March 15, 2018, Comcast again obtained Heim's credit report to conduct a review of her credit history. (*Id.* ¶ 23.) Following its review, Comcast assigned Heim's unpaid debt to a debt collector. (*Id.* ¶ 24.)

Heim remained unaware that a Comcast account had been opened in her name until June 8, 2018, when she received a credit-monitoring alert that debt-collection activity had been initiated against her. (*Id.* ¶ 25.) Heim then had to expend considerable time and effort to dispute the debt, put a stop to the collection effort, and restore her credit rating. (*Id.* ¶¶ 44–49.)

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### A.

According to Heim, Comcast violated the FCRA when it twice obtained her credit report without her authorization. Under the FCRA, 15 U.S.C. § 1681b(f), a non-consumer reporting agency is prohibited from using or obtaining a credit report for an impermissible purpose. *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 621 (N.D. Ill. 2011). Any person who uses or accesses a credit report for an impermissible purpose may be liable for actual damages if they acted negligently, 15 U.S.C. § 1681o, or for punitive damages if they acted willfully, *id.* § 1681n. *See Novak*, 782 F. Supp. 2d at 621. The FCRA lists several permissible purposes for which a person may obtain a credit report. 15 U.S.C. § 1681b(a)(3); *Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 949 (N.D. Ill. 1998). Among those permissible purposes is where the user has a "legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer; or . . . to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F)(i)–(ii). Each of the listed

2

permissible purposes should be broadly construed. *Minter v. AAA Cook Cty. Consolidation, Inc.*, No. 02 C 8698, 2004 WL 1630781, at *4 (N.D. Ill. July 19, 2004) (citing *Ippolito v. WNS*, 864 F.2d 440, 451 n.11 (7th Cir. 1988)).

Heim first contends that Comcast did not have a permissible purpose for obtaining her credit report before opening an account in her name. In response, Comcast argues that it had a legitimate business need for Heim's credit history because its request was necessary as a security measure and to prevent identity theft. There is no question that when the unidentified person used Heim's name and social security number to request cable service, that person initiated a business transaction with Comcast within the meaning of 15 U.S.C. § 1681b(a)(3)(F)(i). *See Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2015 WL 3421156, at *4 (N.D. Ill. May 28, 2015). Moreover, a service provider like Comcast has a legitimate business need "in confirming that prospective consumers are who they claim to be and are eligible for services." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 731 (6th Cir. 2014). Nothing in the FAC suggests that, prior to its receipt of Heim's credit report, Comcast had reason to believe that the person seeking to open an account in Heim's name was not, in fact, Heim. *See Shostack v. Diller*, No. 15-CV-2255 (GBD)(JLC), 2015 WL 5535808, at *10 (S.D.N.Y. Sept. 16, 2015) ("[T]here is nothing in the FCRA that imposes an affirmative duty on [the defendant] to call [the plaintiff] before running his credit report to verify that the information it received online was valid." (internal quotation marks and alterations omitted)). Thus, Comcast had a permissible purpose for its first request for Heim's credit report because it reasonably believed that she was initiating a business transaction with it and had a legitimate business need to confirm her identity.

While Heim alleges in the FAC that Comcast represented to customers that it requested credit reports to prevent identity theft, she argues in her opposition to the motion to dismiss that because Comcast did not actually take any steps to verify her identity, Comcast's stated purpose should not be credited as a permissible purpose. Essentially, Heim claims that Comcast's failure to prevent an imposter from opening an account in her name—even after her credit report revealed that she did not live in Illinois—demonstrates that Comcast's purpose of preventing identity theft was a pretext. But Hein is attempting to impugn Comcast's motives for obtaining her credit report based on information that was only known to Comcast after it received that report. Confirming Heim's identity was the purpose of the initial credit check and, as discussed above, supplied a permissible purpose for acquiring her credit report. This is so even when a creditor, such as Comcast, "obtains a credit report due to an imposter's application for credit even though the identity theft victim did not make the application." *Glanton v. DirecTV*, 172 F. Supp. 3d 890, 896 (D.S.C. 2016) (listing cases);[2] *see also Randall v. Dish Network, LLC*, No. 2:17-cv-05428 (ADS)(GRB), 2018 WL 3235543, at *3 (E.D.N.Y. 2018) ("While [obtaining a credit report] seems to have failed to prevent the identity thief in this particular circumstance from opening the account, this failure should not be confused for an indication that the report was obtained under false pretenses.").

---

[2] The cases cited in *Glanton* include *Daniel v. Bluestem Brands, Inc.*, No. 13-11714, 2014 WL 81763, at *5 (E.D. Mich. Jan. 9, 2014); *Bickley v. DISH Network, LLC*, No. 3:10-CV-00678-H, 2012 WL 5397754, at *5 (W.D. Ky. Nov. 2, 2012); and *Ewing v. Wells Fargo Bank*, No. CV11-8194-PCT-JAT, 2012 WL 1844807, at *4 (D. Ariz. May 21, 2012).

3

Heim claims that the second time Comcast accessed her credit report, it should have been alerted by the first credit report that an imposter had opened the account in her name. But at the time Comcast sought the second credit report, the account in Heim's name had been deactivated after accruing a $637 unpaid balance. Given the outstanding debt, Comcast had a legitimate business need to obtain Heim's credit history to determine whether the amount due would be paid. *See, e.g.*, *Pappas*, 9 F. Supp. 2d at 949–50 ("[W]hen one party may be subject to a monetary loss, that party may perform a credit check to ensure that the debt will be paid."); *Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 WL 206285, at *2 (N.D. Ill. Aug. 17, 1992) ("[T]he collection of allegedly unpaid accounts constitutes 'a legitimate business need' within the meaning of the statute."); *see also Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473822, at *18 (E.D. Mich. Dec. 31, 2014) ("[A] creditor has a permissible purpose to pull a credit report if it reasonably believes that the consumer had defaulted on the credit account, even when it later learns that the consumer did not even own the account."). Moreover, at the time Comcast performed the second credit check, Heim had not learned that an account had been fraudulently opened in her name and had not alerted anybody to that fact.

Nonetheless, Heim claims that Comcast had reason to believe that the account opened in her name was fraudulent based on information in the first credit report. Specifically, Heim asserts that the fact that her first credit report listed a Florida address as her residence should have tipped off Comcast that it was not Heim who had opened the account. However, the Court does not find it reasonable to infer that Heim's Florida address, by itself, should have alerted Comcast to the fraud. Heim provides no authority for the proposition that an apparent address discrepancy in a credit report requires the user to investigate for potential identity theft. Indeed, it is equally plausible that the address discrepancy was caused because the potential customer recently moved to Chicago, in which case, getting cable or internet set up would likely have been an early priority. Or perhaps the customer opened up the account for a child or other relative. Moreover, credit reports contain explicit signifiers of identity theft or fraud. For example, the FCRA includes a provision that requires consumer reporting agencies to place a fraud alert in the files of any consumer who believes that they have been the victim of identity theft. 15 U.S.C. § 1681c-1. The existence of a fraud alert in a consumer's file alerts the user of the credit report, such as Comcast, that it must take additional steps to verify the consumer's identity before opening new credit accounts or modifying existing accounts in the consumer's name. *Id.* § 1681c-1(h). The existence of such a fraud alert is the primary way of alerting a user of a credit report to the possibility of identity theft. *See Bickley*, 751 F.3d at 732. There is no allegation that such a fraud alert had been placed on Heim's account.

In short, the FAC's allegations support Comcast's claim that it had a legitimate business necessity for twice accessing Heim's credit report. For that reason, the FCRA claim is dismissed.

**B.**

Heim also alleges that Comcast violated the ICFA by accessing potential customers' credit reports for the purpose of identity-theft detection but then failing to use the information in those reports to conduct an adequate investigation. However, the Illinois Supreme Court has "severely limited the extraterritorial reach of the ICFA." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)).

Thus, a plaintiff who is not an Illinois resident only has standing to pursue a claim under the ICFA "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854.[3] Here, Heim is a resident of Florida so the Court must look to the circumstances of the disputed transaction to determine whether the ICFA applies.

The determination of whether a disputed transaction occurs primarily and substantially in Illinois is a fact-specific inquiry with no single dispositive factor. *Crichton*, 576 F.3d at 392. Among the relevant factors are: "(i) plaintiff's residence, (ii) where the deception occurred, (iii) where the damage to plaintiff occurred, and (iv) whether plaintiff communicated with defendants or its agents in Illinois." *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, No. 04 C 6504, 2007 WL 164603, at *3 (N.D. Ill. Jan. 12, 2007) (citing *Avery*, 835 N.E.2d at 853–54.). The fact-specific nature of the inquiry does not, however, prevent resolution at the pleadings stage when warranted by the plaintiff's own allegations. *See Crichton*, 576 F.3d at 396–97 (affirming the district court's dismissal of a ICFA claim where "the totality of the facts alleged" demonstrated that the that the "alleged fraudulent activity did not occur 'primarily and substantially in Illinois'"). Here, Comcast contends that the disputed transaction did not take place in Illinois, as Heim is a Florida resident and Comcast's principal place of business is in Philadelphia, Pennsylvania (FAC ¶¶ 4, 9, 19). At minimum, the FAC's allegations establish that Heim lived and suffered damages outside of Illinois. Moreover, Comcast is headquartered outside of Illinois and the FAC alleges that it maintains a company-wide policy of requiring credit checks on all customers. (FAC ¶ 15.)

Illinois is only connected to this litigation because that is where the fraudulent account was opened. But the opening of the fraudulent account is not the deceptive conduct at which Heim's ICFA claim is directed. Rather, her ICFA claim is directed at Comcast's purportedly deceptive practice of running credit checks on its customers to give the illusion that it takes measures to prevent identity theft when opening new accounts. Put another way, Heim has sued Comcast for its allegedly deceptive conduct in running credit checks; she has not sued the person who opened the cable account for his or her fraud. By virtue of the fact that the fraudulent account was opened in Chicago, it appears that Comcast's agents in Chicago may have requested the credit check in this instance. (*See* FAC, Ex. A at 4, Dkt. No. 41-1.) Nonetheless, this is the sole fact tying Comcast's allegedly deceptive business practice to Illinois, and it is not even alleged in the FAC but rather inferred from an exhibit attached to it. And Heim does not allege that any contacts she had with Comcast regarding the fraudulent account took place in Chicago. Instead, she simply pleads that she contacted "Comcast's fraud department to report the identity theft." (FAC ¶ 28.) The lack of detail regarding the location of Comcast's fraud department, along with the fact that Comcast's headquarters are in Philadelphia, does not support an inference that Heim's contacts were with Comcast's Chicago agents. But even accepting for present purposes that those contacts were with agents in Chicago would not be sufficient to tip the balance.

---

[3] This is a matter of prudential, not constitutional, standing and therefore a non-jurisdictional issue properly considered under the standard of Rule 12(b)(6). *See Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 689 (7th Cir. 2015).

Viewing those few allegations tying the ICFA claim to Illinois in the light most favorable to Heim, the relevant conduct underlying the claim, at most, occurred as much in Illinois as it did outside the state. That showing falls far short of pleading that the disputed transaction occurred primarily and substantially in Illinois. Consequently, the ICFA does not apply to the transaction here and Heim's ICFA claim is dismissed.

### III.

Finally, Comcast requests that this Court dismiss the FAC with prejudice. But normally, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the action is dismissed." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1007–08 (7th Cir. 2019). Because this is the first time this Court has dismissed Heim's claims, she will be given an opportunity to amend the complaint and remedy the deficiencies identified herein. Consequently, the FAC is dismissed without prejudice.

Dated: June 1, 2020

_____
Andrea R. Wood
United States District Judge